IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHUVALO M. FERRELL,

    Plaintiff,

      v.

ROCKDALE COUNTY, GEORGIA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-5978-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on Plaintiff's Motion to Strike [Doc. 19] and Defendants Rockdale County, Georgia and Janice Morris's Motion to Dismiss [Doc. 15]. For the reasons set forth below, Defendants' Rockdale County and Morris Motion to Dismiss [Doc. 15] is GRANTED and the Plaintiff's Motion to Strike [Doc. 19] is DENIED. Accordingly, the Defendants' Joint Motion to Stay [Doc. 16] and Plaintiff's Motion for a Scheduling Conference [Doc. 32] are DENIED as moot.

## I.  Background[1]

This case arises from litigation between Plaintiff and his former wife in the Superior Court of Rockdale County. Plaintiff Chuvalo Ferrell is the original founder of Nana's Chicken and Waffles. He was the original funding source,

---

[1] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

was listed as the initial owner on the state charter, and registered the trademark name. (Am. Compl., ¶ 1). Defendant Kelli Potter, formerly known as Kelli Potter–Ferrell ("Potter"), is Plaintiff's ex-wife and former business associate that during the relevant period. (*Id.* ¶ 2). Defendant Janice Morris ("Morris") is the Clerk of Superior Court, Rockdale County, Georgia, who is being sued in her official and individual capacities. (*Id.* ¶ 3). Defendant Morris allegedly used her official position to advance judicial orders, filings, and garnishments to benefit Defendant Potter. (*Id.*). Defendant Rockdale County, Georgia ("Rockdale") is alleged to have direct and vicarious responsibility for actions Morris took in her official capacity. (*Id.* ¶ 4). In 2016, Plaintiff launched Nana's Chicken and Waffles ("Nana's") and funded it with $174,000 he received from Warner Brothers for his work as an artist. (*Id.* ¶ 8). In March of 2016, Plaintiff registered the business with the Georgia Secretary of State under his name. (*Id.* ¶ 10). Previously, in November 2015, Plaintiff filed a trademark registration for the business; the trademark application was only in his name. (*Id.* ¶ 9). Plaintiff's recipes and ingredients for Nana's food items allegedly originated from Plaintiff's Louisiana background. (*Id.* ¶ 11).

On March 1, 2022, Plaintiff and Potter jointly applied for and signed for a commercial building loan for $420,000 to expand Nana's business. (*Id.* ¶ 12). Plaintiff intended to expand to two different locations, and Potter and Plaintiff agreed the money was to be used strictly to open the two new locations. (*Id.*).

2

Unbeknownst to Plaintiff, during March 13–16, 2022, Potter spent approximately $34,000.00 on unauthorized personal expenses from the business account which held the building loan funds. (*Id.* ¶ 13). This action violated the agreement, loan terms, and federal law. (*Id.*). The bank account for Nana's was opened and owned by Plaintiff; Potter had been added as a signatory to the account later and had access to it. (*Id.* ¶ 14). On March 16, 2022, Plaintiff received notice from his financial advisor of Potter's unauthorized spending. (*Id.* ¶ 16). In response, Plaintiff moved the remaining loan funds from the business account until he was able to contact Potter and address the missing money. (*Id.*). Potter and Plaintiff's financial advisor suggested negotiating an operation agreement. (*Id.* ¶ 17). From March 16 to April 28, 2022, Potter and Plaintiff worked out the terms of an operation agreement that granted Potter 50/50 ownership of Nana's locations in McDonough and Conyers and prohibited Potter from spending funds in the business account without prior authorization from Plaintiff. (*Id.*).

The operation agreement featured collective measures to ensure careful control of company funds, transparency, and to constrain Potter's unauthorized or personal use of business money. (*Id.* ¶ 18–19). Plaintiff was satisfied with the agreement and put $334,000.00 of the funds back into the business account, which was the entire remaining loan amount after Potter's unlawful spending and the money paid to building contractors. (*Id.* ¶ 20).

Plaintiff continued to pay contractors for Nana's building expansion projects. (*Id.*). After this point, the sequence of events set forth in the First Amended Complaint becomes very confusing. On April 6, 2022, Potter allegedly fabricated a story that Plaintiff "stole" funds from her and filed an emergency petition in Rockdale County Superior Court, but no notice of the petition was served on Plaintiff. (*Id.* ¶ 21). The next day, Judge Nancy Bills[2] entered a temporary restraining order and interlocutory injunction against Plaintiff, but again no notice was served on Plaintiff. (*Id.* ¶ 22). From April 1 to December 6, 2022, Plaintiff deposited the entire $420,000 loan in installments to a joint Navy Federal Credit Union account; this included money unlawfully spent by Potter. (*Id.* ¶ 23). According to bank records and legal correspondence, more than $320,000 was repaid before a critical June court hearing and full repayment was achieved on December 6, 2022. (*Id.*).

Plaintiff advised Potter and the business advisor of his recent deposits and the account's total through messages exchanged among the three parties in an attempt to comply with the active operation contract. (*Id.* ¶ 24). Potter responded on the same day that all her accounts had been switched to her personal account with the company account being used only for "[a]irlines/traveling, Uber, PR etc" and advising that she would provide

---

[2] The Complaint states the Judge's name was Janice Bills, but Judge Bills's first name is actually Nancy. The Defendant Clerk of Court for Rockdale County Superior Court is Janice Morris.

receipts for her company expenses. (*Id.* ¶ 25). The business advisor responded to Potter that "Uber is not business in Atlanta unless you are referring to your DC trip". (*Id.* ¶ 26).

Potter had active participation in discussions and access to business accounts and was included in negotiations on business funds for building expansion projects with Plaintiff and their financial advisor; however, she continued to misrepresent to the superior court that $420,000.00 was allegedly stolen from her and that she was excised out of business affairs. (*Id.* ¶ 27). Plaintiff was unaware Potter made these statements. (*Id.*). On June 13, 2022, Rockdale County Superior Court Judge Bills presided over Potter's hearing regarding the April 6 petition; the hearing was held without Plaintiff, without notice, and without service to Plaintiff or his business, Blak on Blak Enterprises, Inc. (*Id.* ¶ 28). While Judge Bills acknowledged the lack of service, the hearing continued, and Judge Bills addressed Potter's allegations of stolen business loan funds and other material misrepresentations. (*Id.* ¶ 29). Potter requested the superior court take four actions: 1) enter a restraining order and injunctive relief to prevent further transfer of funds or dissipation, 2) declare Potter's "sole ownership" of funds and property in addition to creating a constructive trust over the alleged misappropriated assets, 3) find emotional and physical harm to Potter resulting from alleged acts such as anxiety, depression, and fear of losing the business, and 4) find that Plaintiff allegedly

canceled the company's business transactions and expansion efforts without authority and with the intent to inflict financial, reputational, and operational harm to the business and Potter. (*Id.*).

Potter's written and sworn allegations were patently false and directly contradicted the negotiated and signed operation agreement, the originating business documents filed with the State of Georgia, and Potter's own statements made to Plaintiff and their financial advisor. (*Id.* ¶ 30). The statements between Plaintiff, Potter, and the financial advisor reveal ongoing oversight and active dispute resolution for handling business versus personal expenditures consistent with the effective operating agreement. (*Id.* ¶¶ 30–31). In addition to the text messages with oversight and personal versus business expense classification, Potter did not dispute Plaintiff's report on the same day that he transferred $70,000 into the joint account, for a running total of $278,257.18. (*Id.* ¶ 33).

Despite the lack of service on Plaintiff or his business, as the Court Clerk of Rockdale County Superior Court, Defendant Morris set Potter's case for a hearing and intentionally failed to verify the lack of service. (*Id.* ¶ 34). She also failed to send a sufficient and proper hearing notice for the June 13, 2022, hearing. (*Id.*). This gave Potter a strategic advantage over Plaintiff to violate his procedural and substantive due process rights as well as his right to access the courts. (*Id.*). Morris acted outside of her official duties and personally used

6

her office to promote Potter and her business by suppressing notices and facilitating the deprivation of Plaintiff's rights. (*Id.* ¶ 35). Plaintiff alleges the actions were motivated by actual malice and direct personal interest, removing any immunity shield. (*Id.* ¶ 36). During the hearing, Potter falsely testified that the $420,000.00 loan fund was not returned to the business account by Plaintiff, including funds improperly spent on Potter's personal events. (*Id.*). Potter also intentionally omitted the fact that a current operation agreement existed and was signed by Plaintiff and Potter, while wrongfully claiming to be Nana's exclusive owner. (*Id.*). Judge Bills adopted the allegations without reliable documentation supporting the claims. (*Id.*).

Potter also stated Plaintiff wanted to destroy her and her business, even threatening to kill her. (*Id.* ¶ 37). Judge Bills, without scrutinizing lease agreements for the new building locations, concluded the assets should be placed under Potter's control and Plaintiff was unlawfully excluded from business and financial rights. (*Id.* ¶ 38). On June 17, 2022, Judge Bills entered an order awarding Potter $770,000.00 total, encompassing the entire amount of the business loan, $150,000 for pain and suffering, and the remainder based on the superior court's determined value of Nana's business assets. (*Id.* ¶ 39). The court transferred full ownership of Nana's to Potter. (*Id.*). Potter removed Plaintiff from the Secretary of State records, completed the transfer of business registrations, and submitted forged lease agreements. (*Id.* ¶ 40). From 2022 to

7

2024, Potter continued to defame Plaintiff in public filings, TV, and social media, accusing Plaintiff of theft, fraud, and violence. (*Id.* ¶ 41). Throughout 2022, Morris abused her office and publicly promoted Potter and Nana's while simultaneously processing all court orders to block Plaintiff's claims to business and property. (*Id.* ¶ 42). Morris acted for Potter's sole benefit and intentionally failed to disclose her conflict of interest and personal relationship with Potter to Plaintiff. (*Id.*). Plaintiff filed a motion to reverse a March 29, 2023 order in the superior court, which was denied. (*Id.* ¶ 43). Throughout 2023 and despite the withholding of conflict-of-interest evidence, Judge Bills ordered Plaintiff to transfer a titled food truck to Potter. (*Id.* ¶ 44). If not immediately transferred to Potter, Plaintiff was threatened by Judge Bills with incarceration. (*Id.*).

In October 2023, Judge Bills issued a child support order that was processed by Morris; this occurred despite Plaintiff's payments being rejected by Potter, indicating a pattern of financial blockade by Potter and Morris. (*Id.* ¶ 45). In November 2023, Plaintiff attempted to pay child support of $1,000 but was rejected by Potter. (*Id.* ¶ 46). On January 12, 2024, Plaintiff appeared at a child support hearing pro se. (*Id.* ¶ 47). The child support action was filed as a separate action, where Potter also raised an emergency petition for injunctive relief and the fraudulent business loan of $420,000. (*Id.*). Plaintiff, surprised by the change of subject matter from the present matter, requested time to

8

produce physical records of full loan repayment and money unlawfully spent by Potter. (*Id.*). Plaintiff's request was denied. (*Id.*). Judge Bills operated with malice and calculated disregard for the Plaintiff's rights when pivoting to address separate court cases and subject matter. (*Id.* ¶ 48). Judge Bills did not provide advance notice or case reassignment to Plaintiff before addressing the unrelated matter. (*Id.* ¶ 49). Plaintiff believes this deprived him of the ability to be prepared and present evidence or consult with counsel for distinct claims, defenses, or the procedural posture. (*Id.*). Judge Bills's maneuver manufactured grounds to hold Plaintiff in contempt of court for matters outside the scope of the properly noticed proceedings, which he alleges is a violation of Georgia procedural law and his fundamental due process rights. (*Id.* ¶ 50). Judge Bills's actions subverted Plaintiff's right to meaningful notice, a fair hearing, and the opportunity to be heard. (*Id.* ¶ 51). Judge Bills also maliciously mocked Plaintiff in open court for failing to have bank records proving his loan re-payment and then issued a contempt order for allegedly not paying back the $420,000.00 to his bank account. (*Id.* ¶ 51). As a result, Plaintiff was incarcerated for 41 days. (*Id.* ¶ 52). During this time and without documentation of failure to repay, Judge Bills ordered Potter to sell Plaintiff's home and allowed for the destruction of all items inside it. (*Id.* ¶ 55).

In February 2024, Plaintiff was owed $89,000 from the sale of his home; however, Potter unlawfully withheld the funds and diverted $15,000 of the

9

funds to a third party without the Plaintiff's consent or authorization. (*Id.* ¶ 56). On February 15, 2024, bank records possessed by Potter were admitted through Plaintiff's counsel to show $324,000.00 had been repaid to the joint account before June 2022, contradicting Potter's pervious sworn statements. (*Id.* ¶ 53). Plaintiff was released from jail after new counsel presented the bank records to conclusively prove Plaintiff repaid the entire loan in full two years prior to the hearing where he was jailed. (*Id.* ¶ 54). Upon his release on March 9, 2024, Plaintiff experienced homelessness because all his property was seized and disposed of. (*Id.* ¶ 57).

In June 2024, Potter filed a contempt petition against Plaintiff for allegedly missing child support payments. (*Id.* ¶ 58). Meanwhile, Potter continued withholding Plaintiff's proceeds from the home sale. (*Id.*). On August 14, 2024, Plaintiff was jailed again for seven days for $14,898.00 in child support arrears. (*Id.* ¶ 59). Plaintiff was released after payment. (*Id.*). In October 2024, Potter filed a request to garnish $770,000.00 from Plaintiff with Morris's support and instruction. (*Id.* ¶ 60). Potter requested $770,000.00 despite admitting the court's judgment was based on misrepresentations of $420,000.00 allegedly stolen from her but already repaid by Plaintiff. (*Id.*). On October 25, 2024, Potter agreed with Morris to unlawfully deposit all remaining home sale proceeds (Plaintiff's money) into the court's escrow account and out of Plaintiff's reach. (*Id.* ¶ 61). This was an intentional

10

deprivation of funds in violation of the homestead exemption[3]. (*Id.*). Morris, at Potter's request, refused to send written notice to Plaintiff about this deposit with the court. (*Id.* ¶ 62). Without this knowledge, Plaintiff was prevented from asserting rights to his money or his valid homestead exemption. (*Id.*). On December 11, 2024, Plaintiff attempted to make another child support payment; the payment was blocked by Potter. (*Id.* ¶ 63). In July 2025, Plaintiff learned for the first time his remaining $74,000.00 from the sale of his primary residence was deposited in the court's escrow account by Potter and retained by Morris without prior notice or an opportunity to contest the deposit of funds. (*Id.* ¶ 64).

In sum, from 2022 to 2025, Morris blocked Plaintiff's access to courts, withheld critical hearing and filing notices, and repeatedly abused her office to support Potter and Nana's on social media for Potter's gain and Plaintiff's detriment. (*Id.* ¶ 65). Potter and Morris's personal relationship resulted in clear conflict and bias against Plaintiff. (*Id.*). On August 28, 2025, Morris[4] called Plaintiff's associate to complain of the recent public outcry about her office obtaining and failing to notify Plaintiff it possessed the $74,000.00 from

---

[3]    The Homestead Exception protects a certain amount of equity in a primary residence from alleged creditor collection during bankruptcy or garnishment proceedings. (Am. Compl., ¶ 61).

[4]    The Amended Complaint uses the name "Janice Mills", but the Court believes this is a mistake and is meant to refer to Defendant Janice Morris. (Am. Compl., ¶ 66).

Plaintiff's primary residence sale. (*Id.* ¶ 66). During the phone conversation, Morris made material misrepresentations that the funds were never deposited into the court's escrow account, despite documentation in Morris' possession indicating otherwise. (*Id.* ¶ 67). The conversation concluded with another attempt to dissuade Plaintiff from taking steps to retrieve his money. (*Id.* ¶ 68). As of the filing date of the Amended Complaint, the superior court has not released the money. (*Id.*). Due to Morris's and Potter's collective actions, Plaintiff was incarcerated for forty-eight days and rendered homeless, he lost assets in business accounts and his home sale proceeds, and suffered humiliation, emotional distress, and nationwide ostracism in personal and business contexts. (*Id.* ¶ 69).

Plaintiff filed the original Complaint on October 18, 2025 (Doc. 1) and amended the Complaint on October 27, 2025. (Doc. 6). Plaintiff asserts eleven claims: civil RICO under 18 U.S.C. § 1961–1968 (Count I), conspiracy to deprive constitutional rights under 42 U.S.C. § 1985 (Count II), denial of access to the courts under the 1st and 14th Amendments and the Georgia Constitution (Count III), deprivation of property and liberty without due process of law (Count IV), municipal liability for policy/custom and failure to train/supervise (Count V), unreasonable seizure of property under the 4th Amendment (Count VI), fraud and intentional misrepresentation (Count VII), conversion (Count VIII), abuse of process (Count IX), intentional infliction of

emotional distress (Count X), and civil conspiracy (Count XI). (Am. Compl., ¶¶ 72–172). Defendant Potter filed an answer to the Amended Complaint on November 28, 2025. (Doc. 14). Defendants Rockdale and Morris filed this Motion to Dismiss on November 28, 2025. (Doc. 15). Plaintiff opposes the Motion to Dismiss. (Doc. 17). Defendants Morris and Rockdale jointly filed a Motion to Stay pending a ruling on the Motion to Dismiss. (Doc. 16). Plaintiff also opposes the Motion to Stay. (Doc. 20). Plaintiff filed a Motion to Strike Exhibit 1 from the Motion to Dismiss. (Doc. 19). Defendants Rockdale and Morris oppose the Motion to Strike. (Doc. 26). All of these Motions are presently before the Court.

## II.  Legal Standards

### A.  Motion to Strike

Under Federal Rule of Civil Procedure 12(f), courts may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *United States ex rel. Dildine v. Pandya*, 389 F.Supp.3d 1214, 1219 (N.D. Ga. 2019) (quoting Fed. R. Civ. P. 12(f)). Motions to strike are disfavored and viewed as "a drastic remedy to be resorted to only when required for the purposes of justice." *S. River Watershed All., Inc. v. DeKalb Cnty., Ga.*, 484 F. Supp. 3d 1353, 1361–62 (N.D. Ga. 2020) (quoting *TracFone Wireless, Inc. v. Zip Wireless Prod., Inc.*, 716 F. Supp. 2d 1275, 1290 (N.D. Ga. 2010)). Generally, courts will deny a motion to strike "unless the matter sought

13

to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Wiegand v. Royal Caribbean Cruises Ltd.*, 473 F.Supp.3d 1348, 1350–51 (S.D. Fla. 2020).

### B.   Motion to Dismiss

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am. S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*,

14

550 U.S. at 555).

### III. Discussion

#### A. Motion to Strike

Plaintiff attempts to strike Defendants Rockdale and Morris's Exhibit 1 to the Motion to Dismiss. (Pl.'s Mot. to Strike, at 1–2). Plaintiff makes three arguments. First, Exhibit 1 is outside the pleadings and does not fit an exception. (*Id.* at 4–5). Second, Exhibit 1 presents an uncertified docket printout and cannot be used at the motion to dismiss stage for defenses such as claim-splitting, jurisdictional bars, or other issues. (*Id.* at 5). Third, Exhibit 1 is immaterial to the motion to dismiss under Fed. R. Civ. P. 12(b)(6) as it is improper and unduly prejudicial to Plaintiff. (*Id.*). Defendants argue Exhibit 1 is a listing of Plaintiff's cases in Rockdale County Superior Court that Defendants request the Court take judicial notice of. (Defs.' Resp. in Opp. to Pl.'s Mot. to Strike, at 1–2). Defendants believe there is no reason to strike the Exhibit, and ask that the motion should be denied. (*Id.* at 2).

Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). By its terms, Rule 12(f) refers to striking matter from pleadings. Exhibit 1 to the Motion to Dismiss is not a pleading. Therefore, the Motion to Strike should be denied.

### B. Claim Splitting Violation Between Substantially Duplicative Lawsuits

Defendants argue this action violates the rule against "claim splitting" as it is duplicative of the case Judge Ross dismissed *Ferrell v. Rockdale Cnty. et al (Ferrell I)*, 1:25-cv-02184-ELR (N.D. Ga. Nov. 25, 2025). (Defs. Mot. to Dismiss, at 8). Plaintiff asserts claim splitting did not occur based on the procedural timeline of both suits. (Pl.'s Resp. in Opp'n Mot. to Dismiss, at 8–9).

The claim splitting doctrine promotes judicial economy and is more concerned about the court's comprehensive management of its docket, and by extension its resources, as opposed to focusing on the finality of judgment like res judicata does. *See Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). The Eleventh Circuit uses a two-factor test for claim-splitting where the court "analyzes 1) whether the case involves the same parties and their privies, and 2) whether separate cases arise from the same transaction or series of transactions." *Id.* at 841–42 (quoting *Khan v. H&R Block E. Enters., Inc.*, 2011 WL 3269440, at *6 (S.D. Fla. July 29, 2011)). District courts apply a transactional test from the Restatement (Second) of Judgments § 24 to determine if two cases share the same "nucleus of facts". *See id.* at 842. Courts consider factors such as: "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business

16

understanding or usage." *Steele v. United States*, 144 F.4th 316, 325 (D.C. Cir. 2025). When the same parties are involved in both suits and the second suit arises from the same nucleus of facts, the claim splitting doctrine blocks the second suit. *See id.* at 326.

Turning to the first prong, the parties here are not the same as in the first suit. The first suit, *Ferrell I*, had five defendants: Rockdale County, Judge Nancy C. Bills, County Attorney Qader A. Baig, Kelli Potter, and Bobby Aniekwu. *Ferrell I,* Compl., at 2 (N.D. Ga. Apr. 22, 2025). This suit has three defendants: Rockdale County, Kelli Potter, and Janice Morris. (Am. Compl. ¶¶ 2–4). Defendant Morris was not present in the first suit and was not in privity in her individual capacity. Turning to the second prong, Defendants argue that the same nucleus of operative facts from Rockdale County Superior Court also governs the present case. (Defs. Mot. to Dismiss, at 9). Plaintiff opposes this assertion by stating that some factual allegations also arise from Morris' concealment and misrepresentations of $74,000 from the home sale. (Pl.'s Resp. in Opp'n Mot. to Dismiss, at 9). The Court agrees with the Plaintiff that the factual allegations in the suits do not share the same operative nucleus as many of Plaintiff's claims arise from later actions. (Am. Compl., ¶¶60–61, 64–65, 67–68, 70). Therefore, the claim splitting doctrine does not apply and the Court will deny the Motion on this ground.

17

## C. Shotgun Pleadings

Next, Defendants argue that the Amended Complaint should be dismissed because the pleading is a shotgun pleading that incorporates each count by reference from all preceding paragraphs and counts. (Defs. Mot. to Dismiss, at 10). Because the Amended Complaint is conclusory, vague, and contains immaterial facts, Defendants argue it is hard to identify which claims and allegations apply to each defendant. (*Id.* at 10–11). Defendants also argue that the pleading fails the requirement for a § 1983 claim by not pleading that a government defendant violated the Constitution by his or her own individual actions. (*Id.* at 11). Plaintiff asserts the Amended Complaint is not a shotgun pleading in its function. Plaintiff argues the pleading gives a factual narrative in identifying who, when, and what actions were taken in addition to specifying the targeted defendant and appropriate legal theory. (Pl.'s Resp. in Opp'n Mot. to Dismiss, at 11–12). Plaintiff argues that Rule 8 and *Twombly/Iqbal* requirements are met as the Defendants do not have to guess which counts apply to them or based on what facts. (*Id.*).

"A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b) or both." *Barmapov v. Amuila*, 986 F.3d 1321, 1324 (11th Cir. 2021). The Eleventh Circuit has little tolerance for shotgun pleadings as they waste judicial resources, broaden the scope of discovery, wreak havoc on appellate court dockets and undermine the public's

18

respect for the courts. *See IOU Cent., Inc. v. Emryolisse USA, Inc.*, 2021 WL 2557501, at * 5 (N.D. Ga. Mar. 22, 2021). There are four categories:

> The first is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The second is a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third is a complaint that does not separate each cause of action or claim for relief into a different count. And the final type of shotgun pleading is a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Barmapov*, 986 F.3d at 1324–25. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Plaintiff's Amended Complaint begins with facts common to all counts, with her allegations totalling sixty-five numbered paragraphs. (Am. Compl., ¶¶ 8–71). Plaintiff begins with details of Nana's Chicken and Waffles business formation (*Id.* ¶¶ 8–12), discusses Potter's unauthorized business spending and the subsequent negotiation of the operation agreement (*Id.* ¶¶ 13–20, 23–26), Potter's suit for the allegedly stolen $420,000 in Rockdale County Superior

Court (*Id.* ¶¶ 21–22, 27–33), including Morris's involvement (*Id.* ¶¶ 34–35, 42–43, 45, 60–62, 65–68), and the superior court proceedings and consequences for Plaintiff. (*Id.* ¶¶ 36–41, 43–59, 63–64, 69–71). Plaintiff brings three claims against Potter and Morris: civil RICO under 18 U.S.C. §§ 1961–1968 (Count 1) (*Id.* ¶¶72-81), conspiracy to deprive constitutional rights under 42 U.S.C. § 1985 (Count 2) (*Id.* ¶¶ 82–89), and civil conspiracy (Count 11) (*Id.* ¶¶ 168–172). Plaintiff has two claims against Rockdale and Morris: denial of access to the courts under the 1st and 14th Amendments to the United States Constitution and Georgia Constitution, Art. 1, Sec. 1, Paragraph XII (Count 3) (*Id.* ¶¶ 91–105) and 42 U.S.C. § 1983 Municipal Liability for policy/custom and failure to train/supervise (Count 5) (*Id.* ¶¶ 114–132). Lastly, Plaintiff brings six additional claims against all three Defendants: deprivation of property and liberty without due process of law under the 14th Amendment and 42 U.S.C. § 1983 (Count 4) (*Id.* ¶¶ 106–113), unreasonable seizure of property under the 4th Amendment (Count 6) (*Id.* ¶¶ 133–141), fraud and intentional misrepresentation (Count 7) (*Id.* ¶¶ 142–150), conversion (Count 8) (*Id.* ¶¶ 151–157), abuse of process (Count 9) (*Id.* ¶¶ 158–162), and intentional infliction of emotion distress (Count 10) (*Id.* ¶¶ 163–167). For Counts 1, 2, and 7 through 11, it is unclear if Morris is allegedly acting in her official capacity, individual capacity, or both. (*Id.* ¶¶72–80, 82–90, 142–167). An inference can be made that Plaintiff alleges Morris acted in her official capacity as Rockdale

20

County is included in each of those counts' prayers for relief. (*Id.*).

Each count begins with "Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein." (Defs.' Mot. to Dismiss, at 10; *see also* Am. Compl., ¶¶ 72, 82, 91, 106, 114, 133, 142, 151, 158, 163, 168). This results in "each count [being] replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). For example, statements about Rockdale County Superior Judge Nancy Bills's actions, the financial advisor's statements about Uber-related charges, alleged threats Plaintiff made to Potter and Potter's business, and Plaintiff's child support payment history consist of rambling irrelevancies as it is unclear which Defendant and which claims they tie to. (Am. Compl., ¶¶ 26, 37, 43, 51, 59, 63). The Court also agrees that vague and immaterial facts are lumped together, depriving Defendant Morris of notice if her actions were taken in her official capacity, individual capacity, or both. (*Id.* ¶¶ 72–81, 82–90, 168–172). In Counts 1,2, 7, 9, 10, and 11, Rockdale County is only mentioned in the prayer for relief, requiring the Court to infer that Rockdale County should be on notice of Morris's official capacity actions. However, this inference would violate Rule 10(b) of the Federal Rules of Civil Procedure for discrete claims pled in separate counts, until replead. Fed. R. Civ. P. 10(b); *see also Magluta*, 256 F.3d

at 1284. Following Eleventh Circuit precedent, the general rule is to allow a litigant one chance to remedy such deficiencies; however, a district court is not required to grant leave to amend when plaintiff is represented by counsel and never filed a motion to amend or requested leave to amend before the district court. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

Lastly, the Court will briefly address Defendants' argument that Plaintiff did not meet the § 1983 standard for pleading a constitutional violation. (Defs.' Mot. to Dismiss, at 11). Following the Supreme Court decisions in *Twombly* and *Iqbal*, the Eleventh Circuit eliminated any heightened pleading standard for § 1983 cases, holding that there is "no heightened pleading standard as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." *Hoefling v. City of Miami*, 811 F.3d 1271, 1276 (11th Cir. 2016) (citation modified). The language Defendants relied upon from *Keating v. City of Miami*, 598 F.3d 753, 763 (11th Cir. 2010) was noted to be dicta. *See Hoefling*, 811 F.3d at 1276. Therefore, the Defendants' heightened pleading argument fails. Accordingly, the Court will not dismiss the First Amended Complaint on this ground.

## D. Lack of Standing

Defendants argue Plaintiff lacks standing to sue as Plaintiff's status in a bankruptcy proceeding vests the claims in this lawsuit in the bankruptcy trustee. (Defs. Mot. to Dismiss, at 11–12). Plaintiff asserts Defendants'

22

argument overstates the bankruptcy estate's reach and ignores the bankruptcy trustee not exercising control over these claims. (Pl.'s Resp. in Opp'n Mot. to Dismiss, at 12).

Plaintiff has three points. First, many of the claims arise from acts and injuries that occurred after the bankruptcy petition was filed in January 2025 and claims originating after the petition's filing belong to the debtor. (Pl.'s Resp. in Opp'n Mot. to Dismiss, at 13). Second, the bankruptcy trustee filed notice to abandon these claims as the assets were of "little to no value to the estate", thereby relinquishing the estate's interest and returning the interest to Plaintiff. (*Id.*). Third, Plaintiff asserts Defendants provided no evidence that these claims are property of the estate and have not been abandoned or willfully not pursued. (*Id.* at 14).

The Court, sua sponte, takes judicial notice of Plaintiff's bankruptcy case, *Chuvalo Marquis Ferrell*, 25-51063-pwb (Bankr. N.D. Ga. filed Jan. 31, 2025). *See* Fed. R. Evid. 201(b)–(c). Starting "a bankruptcy case creates an estate made up of nearly all the debtor's assets." *Henderson v. Franklin*, 782 Fed. Appx. 866, 870 (11th Cir. 2019); *see also* 11 U.S.C. § 541(a)(1). When a proceeding is converted from a Chapter 13 to a Chapter 7 proceeding, the Chapter 7 estate "consists of all property belonging to the debtor as of the date that the original Chapter 13 petition was filed." *Henderson,* 782 Fed. Appx. at 870. For Chapter 7 bankruptcy, the debtor forfeits his pre-petition assets to be

23

liquidated by the Chapter 7 trustee, but the wages and assets acquired after a bankruptcy filing are shielded from creditors. *Id.* Causes of action belonging to the debtor at the start of the bankruptcy case are absorbed into the bankruptcy estate. *Id.* "A pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in a bankruptcy has standing to pursue it." *Parker v. Wendy's Int'l., Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004). Unless the asset is abandoned, it is held by the trustee. *Id.* Abandonment requires strict adherence to § 554 of the Bankruptcy Code. *Id.* "Abandonment requires notice and a hearing and a showing that the property is 'burdensome to the estate or that is of inconsequential value and benefit to the estate.'" *Nilhan Dev., LLC v. Glass* (*In re Nilhan Developers, LLC*), 631 B.R. 507, 537 (Bankr. N.D. Ga. 2021); *see also* 11 U.S.C. § 554(a). "Property of the estate cannot be informally abandoned," *Nilhan*, 631 B.R. at 537, as Bankruptcy Rule 6007-1(b) requires a trustee to submit a written notice with the Bankruptcy Clerk within fourteen days after Meeting of Creditors that states the grounds to abandon an asset. *See* Bankr. N.D. Ga. R. 6007-1(b). If there is no objection from the trustee's notice within fourteen days, then the property is abandoned as of the earlier date of the Meeting of Creditors or the written notice's date. *Id.*

Plaintiff's bankruptcy case was first filed as a Chapter 13 petition on January 31, 2025. (*Chuvalo Marquis Ferrell*, 25-51063-pwb (Bankr. N.D. Ga. filed Jan. 31, 2025) ("Ferrell Bankr."), Doc. 1). It was converted to a Chapter 7

petition on April 28, 2025. (*Id.*). When a case is converted, the Chapter 7 estate is comprised of generally the same interests in the estate as if the debtor had originally filed under Chapter 7, provided that the debtor has possession or control of the interests at the time of conversion. *See Rodriguez v. Barrera (In re Barrera)*, 22 F.4th 1217, 1220–21 (10th Cir. 2022). The trustee filed notice of abandonment for property litigation, including this suit, on November 11, 2025. (Ferrell Bankr., Doc. 45). The abandonment was unopposed, making abandonment effective and restoring Plaintiff's standing on November 25, 2025. (*Id.*). While it is unclear if a hearing was held, it is clear Plaintiff did not have standing to bring this claim when it was filed on October 18, 2025. (Compl., Doc. 1). "Standing is determined at the time the plaintiff files its complaint." *Cook v. Bennett*, 792 F.3d 1294, 1298 (11th Cir. 2015). Article III standing cannot arise later but must be established at the outset of the litigation, and it must remain as the case progresses through federal court. *See Am. Civil Liberties Union of Fla., Inc. v. Dixie Cnty., Fla.*, 690 F.3d 1244, 1247 n.5 (11th Cir. 2012). Plaintiff did not gain standing to bring this suit until thirty-eight days after it was first filed. Therefore, this Court will dismiss all claims due to a lack of standing.

### E. Rooker-Feldman Doctrine

While the Court does not have to address the remaining arguments, it will do so briefly. Defendants argue Plaintiff's claims cannot be heard in this

25

court as it is a violation of the Rooker-Feldman doctrine. (Defs. Mot. to Dismiss, at 13). Plaintiff asserts the Rooker-Feldman doctrine does not apply because Plaintiff is not asking the court to overturn any rulings that originated from Rockdale Superior Court. (Pl.'s Resp. in Opp. Mot. to Dismiss, at 15). The Court agrees with Plaintiff.

The Rooker-Feldman doctrine states federal courts (other than the Supreme Court) lack appellate jurisdiction over state court judgments. *See Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1262 (11th Cir. 2021). When a plaintiff loses in state court, he is barred from seeking what in substance is an appellate review of the state judgment in district court based on a claim that the state judgment violates the plaintiff's federal rights. *See id.* at 1263 (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). District courts in the Eleventh Circuit have adopted the Second Circuit's understanding that

> the doctrine applies when: 1) the federal plaintiff lost in state court; 2) the plaintiff now complains of injuries caused by the state court judgment; 3) the plaintiff asks the district court to review and reject the state court judgment; and 4) the state court judgment was rendered prior to commencement of the district court proceedings.

*Alyshah v. Hunter*, 2006 WL 2644910 at * 5 (N.D. Ga. Sept. 13, 2006). However, Plaintiff's injuries came from other actions and there was not a request to overturn any of the state court's final judgments. Thus, the Rooker-Feldman doctrine does not bar the Plaintiff's claims here.

26

### F. Failure to State a Claim

Defendants argue Plaintiff failed to state a claim against Rockdale because Morris is not a county employee (Defs. Mot to Dismiss, at 15–16) and there are no valid civil rights claims (*Id.* at 16–19) or valid RICO claims. (*Id.* at 19–20). Plaintiff asserts Rockdale is responsible for Morris as she either had delegated final policymaking authority in key areas or had her conduct ratified. (Pl.'s Resp. in Opp. Mot. to Dismiss, at 18). Plaintiff also asserts that the Amended Complaint adequately specifies which of Defendant Morris's actions violated Plaintiff's 14th and 4th Amendment rights (*Id.* at 19) and which actions form the basis of the state law claims against her. (*Id.* at 20–21).

#### 1. Civil RICO 18 U.S.C. § 1961–1968

"A private plaintiff suing under the civil provisions of RICO must allege six elements: that the defendants 1) operated or managed 2) an enterprise 3) through a pattern 4) of racketeering activity that included at least two predicate acts of racketeering, which 5) caused 6) injury to the businesses or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020); *see also Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014). Failure to allege an element will result in the complaint's dismissal. *See Cisneros,* 972 F.3d at 1211. A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.*; 18

27

U.S.C. § 1961(4). "An association-in-fact enterprise" has been held by the Supreme Court to require plaintiff to "allege that a group of persons shares three structural features: 1) a 'purpose', 2) 'relationships among those associated with the enterprise', and 3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose'." *Cisneros,* 972 F.3d at 1211 (quoting *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) (citation modified). The purpose prong requires more than a generally shared interest like making money but requires a RICO plaintiff to plausibly allege participants shared the purpose of enrichment through a particular criminal course of conduct. *See id.*

Plaintiff has adequately alleged racketeering activity with at least two predicate acts, (Am. Compl., ¶ 75), but has not adequately alleged an "enterprise." (*Id.* ¶ 74). For association enterprise, there is no explanation of the purpose, relationship, or longevity between Defendants Potter and Morris. It is also unclear if the Defendants Rockdale and Morris directly caused each of Plaintiff's injuries such as "loss of professional reputation and business standing." (*Id.* ¶ 78). For civil RICO claims—a certain breed of fraud claims—an increased level of specificity is required to be pled. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). To be compliant with Rule 9(b), "the complaint must allege 1) the precise statements, documents, or misrepresentations made, 2) the time and place of and person

28

responsible for the statement, 3) the content and manner in which statements misled the Plaintiffs; and 4) what the Defendants gained by the alleged fraud." *Id.* at 1316–17; *see also* Fed. R. Civ. P. 9(b). Yet, Plaintiff did not provide the time, place, or precise statements made nor were the altered documents that Defendant Morris allegedly created provided. Plaintiff also failed to allege what Defendant Morris gained from the alleged fraud. Therefore, Plaintiff has failed to allege the second and fifth elements of civil RICO and has failed to meet the heightened Rule 9(b) standards. The Court should dismiss the claim.

### 2.  Conspiracy to Deprive Constitutional Rights 42 U.S.C. § 1985

"To recover under 42 U.S.C. § 1985, plaintiff "must allege and prove 1) a conspiracy, 2) for the purpose of depriving, directly or indirectly, any person or class of persons of the equal protection of the laws or equal privileges and immunities under the laws; 3) an overt act in furtherance of the object of the conspiracy; and 4) the plaintiff a) was injured in his person or property, or b) was deprived of having and exercising any right or privilege." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). This requires the intent to deprive one of equal protection or equal privileges and immunities to be based upon racial or otherwise class-based offensively discriminatory aminus behind the conspirator's actions. *See id.* at 1007–08. While the Supreme Court has never formally defined "class" the term is held to unquestionably connote something more than a group of individuals sharing a desire to engage in conduct that the

29

defendant disfavors. *See Dean v. Warren*, 12 F.4th 1248, 1258 (11th Cir. 2021) (explaining a two-part inquiry is needed if 1) there is a qualifying class and 2) the defendant was motivated by discriminatory animus against the class). In civil rights actions, complaints will be dismissed if the allegations are vague, conclusory, or only have the general nature of conspiracy allegations. *See Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). However, Plaintiff's Amended Complaint is vague and makes conclusory conspiracy allegations, (Am. Compl., ¶¶ 76,84–87), with no mention of racial or other class animus motivating Defendants' behavior. Therefore, Plaintiff has failed to state a conspiracy claim under 42 U.S.C. § 1985 and the Court will dismiss this claim.

### 3. Denial of Access to Courts

As the Court is unsure if this claim is brought under Georgia common law or statute, the Court briefly analyzes whether Plaintiff states a claim under either avenue. Generally, denial of access claims have two separate classes: 1) denial of an opportunity to litigate for a class of potential plaintiffs or 2) specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. *See Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). Official actions that cause denial of access may result in a loss or inadequate settlement of an otherwise meritorious case. *Id.* at 414. Cases should look backward to "when specific litigation ended poorly, or could not have commenced, or could have produced

30

a remedy subsequently unobtainable." *Id*. Here, Plaintiff alleged the second type of backward-looking suit when he asserted that Defendants failed to send notices and suppressed, delayed, or obstructed the return or use of identifiable funds, in addition to the intentional misrepresentation about the existence and location of the funds in the Court's registry. (Am. Compl., ¶ 97). For both types of cases, the Supreme Court has held an underlying cause of action must be an element described in the complaint, as to describe a remedy that may be awarded recompense "but not otherwise available in some suit that may yet be brought." *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id*. at 416; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–15 (2002) (holding the underlying discrimination cause of action contained detailed allegations of events leading to termination, including relevant dates, ages, and nationalities of some of the relevant persons involved, which gave fair notice of what the claims were and the grounds they rested on). Here, Plaintiff did not plausibly allege the actual harm by stating simply "demonstrating ongoing harm up to and including the filing date". (Am. Compl., ¶ 95). Further, he did not state what underlying cause of action was not available to him. (*Id*. ¶¶ 96–104).

Turning to denial based on Georgia law, the Court first looks to the plain

statutory language which states:

> A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

O.C.G.A. § 9-11-11.1(b)(1). Section (c) provides the actions that fall under "act in furtherance of the person's or entity's right of petition or free speech…in connection with an issue of public interest or concern," including the following:

> 1) Any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
>
> 2) Any written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
>
> 3) Any written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern; or
>
> 4) Any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern.

O.C.G.A. § 9-11-11.1(c)(1); *see also Morgan v. Mainstreet Newspapers, Inc.*,

368 Ga. App. 111, 114 (2023). To determine if dismissal is appropriate, first, the court must decide whether the party filing the motion has made a threshold showing that the challenged claim is one "arising from" protected activity. *Id.* at 115. If it is, the court must decide if the plaintiff established a probability of prevailing on the claim. *Id.* Here, Plaintiff has failed to adequately allege which of Rockdale County's policies or customs specifically resulted in denial of access. (Am. Compl., ¶¶ 102–103). The policies and customs are unnamed and do not plausibly allege how service was withheld, the biased administration that was dispensed, or the particular social media endorsements from Morris that denied access Plaintiff access. (*Id.*). Plaintiff's complaint actually details times where he was granted access to the courts (*Id.* ¶¶ 47–48, 51, 54). Therefore, the first prong fails, and the Court should dismiss the Georgia law based denial of access claims.

### 4. Deprivation of Property and Liberty without Due Process of Law

To state a 42 U.S.C. § 1983 claim for deprivation of property or liberty without due process, a plaintiff must allege a constitutionally protected interest and that he was deprived of that interest by state action. *See Gorenc v. Klaassen*, 421 F. Supp. 3d 1131, 1161 (D. Kan. 2019). If both elements are alleged, the next inquiry is what process was due and whether it was provided. *Id.* A protectable right is not just a professed abstract need or desire to acquire something but exists when a plaintiff has a legitimate claim of entitlement to

33

something. *See id.* at 1162. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citation modified); *Fish Sand & Gravel, Co. v. Giron*, 465 Fed. Appx. 774, 779 (10th Cir. 2012) (holding a property interest is created by an independent source like state law).

Plaintiff alleges a procedural due process violation by Rockdale and Morris because they unlawfully seized, transferred, and dispossessed Plaintiff of his home, business, business funds, and personal property, withheld and diverted home-sale proceeds without contemporaneous written notice, denied access to emergency and substantive hearings in court, and caused Plaintiff's incarceration multiple times. (Am. Compl., ¶ 108). Plaintiff states in a conclusory fashion that he possesses property and liberty interests, (*Id.* ¶ 109), but he does not plausibly allege or give adequate notice as to what the individual interests are. Plaintiff does not plausibly allege that any state action, via an established policy or custom, deprived him of his rights. Even if Plaintiff had plausibly alleged that his liberty or property interests had been deprived by state action, he has not alleged such deprivations to be without due process. Plaintiff has alleged throughout his Amended Complaint that there has be continuing process in the form of court proceedings and does not explain why further due process in the state appellate court is not available.

34

Therefore, because Plaintiff fails to meet the three elements of this claim, the Court will dismiss this claim on this alternative ground as well.

### 5.  42 U.S.C. § 1983 Municipal Liability- Policy/Custom and Failure to Train/ Supervise

Defendants argue Rockdale County does not control the Superior Court Judge, Superior Court Clerk, or her staff and, therefore, Rockdale County cannot be liable for Morris's actions or omissions under a respondeat superior theory. (Defs. Mot. to Dismiss, at 16). Defendants are correct—because clerks are not county employees, *see Taylor v. Bartow Cnty., Ga.*, 860 F. Supp. 1526, 1536 (N.D. Ga. 1994), Rockdale's liability under § 1983 cannot be based on the doctrine of respondeat superior. *See Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: 1) that his constitutional rights were violated; 2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and 3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A county may be responsible if the plaintiff can identify a municipal policy or custom that caused his injury. *See Grech*, 335 F.3d at 1329. " 'Policy' is an officially adopted decision of the municipality, or a decision of a municipal officer of such a rank that may be said to be acting on the municipality's behalf." *See Albra v. City of Fort Lauderdale*, 232 Fed. Appx. 885, 890 (11th Cir. 2007). Custom is defined as a "practice that is so settled and permanent that it takes on the force of the

law" requiring the policy or custom be "generally necessary to show a persistent and wide-spread practice." *McDowell*, 392 F.3d at 1290. "Deliberate indifference is exhibited when a 'municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'" *Albra*, 232 Fed. Appx. at 890. Plaintiff must show that the municipality had notice of the need to train in order to show deliberate indifference. *See id.* Both require "a plaintiff must show that the local government entity, here the county, has authority and responsibility over the governmental function in issue and must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Grech,* 335 F.3d at 1330.

Plaintiff has failed to allege the elements for Defendants Rockdale and Morris. First, Rockdale is alleged to have "intentionally treated Plaintiff differently than other similarly situated litigants without a rational basis . . . ." (Am. Compl., ¶ 98). Plaintiff has admitted not knowing a reason why his treatment was allegedly different, leading this Court to infer that Rockdale had no indication or notice that training was needed to address this problem. Plaintiff makes conclusory statements that Rockdale's policymakers had awareness of a policy or custom "through repeated incidents, public outcry, and direct communications," (*Id.* ¶ 121), but does not plead any details about

36

repeated incidents or examples of public outcry. The only direct communication alluded to is a phone call that did not involve Plaintiff himself but one of his associates; that phone call does not reveal what "recent public outcry" entails. (*Id.* ¶ 66). Further, Plaintiff alleges Morris had a custom of promoting Defendant Potter's interest to Plaintiff's detriment, including through social media, (*Id.* ¶ 124), yet did not provide evidence or more explanation of the favoritism customs. The Court is also troubled by Morris being portrayed as a final policymaker for Rockdale when she is not a Rockdale County employee, as it is directly in conflict with Ga. Const. Art. IX, § 2, (c)(7). *See* Ga. Const. art. IX, § 2, (c)(7) (explaining power granted to counties does not affect action involving any court or the court personnel). Therefore, Plaintiff has not adequately pled *Monell* liability, and the Court will dismiss this count on this alternative ground.

### 6. Fraud and Intentional Misrepresentation

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For fraud or intentional misrepresentation, the plaintiff is required "to identify the precise statements and representations made, the time and place of each statement and representation, the manner in which each statement and representation misled the plaintiff, and exactly what each defendant obtained as result of the statements and representations." *Christstrikes Custom Motorcycles, Inc. v.*

37

*Teutul*, 2016 WL 3406391, at *3 (M.D. Fla. June 21, 2016). In the fraud and intentional misrepresentation claim, Plaintiff alleges Defendants Potter and Morris made false statements, omissions, and fabrications for a period of three years—in the form of Potter's emergency petition, Potter's testimony before Superior Court Judge Bills, business filings, and both Defendants' social media posts. (Am. Compl., ¶¶ 143–144). Plaintiff states specific false statements were made by Defendant Morris but does not actually explain what those statements were; for example, the social media and community outreach statement are absent from the complaint. (*Id.* ¶ 146). Plaintiff alleges his reliance on the false statements but does not delineate between the two Defendants whose statement caused what reliance. Plaintiff also fails to allege what each Defendant obtained because of the statements and representations. Therefore, as Plaintiff has failed to meet 9(b) pleading requirements, the Court will dismiss this claim.

### 7. Conversion

To establish a claim for conversion, "a plaintiff must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property and (4) refusal by the other party to return the property." *Perdum v. Wells Fargo Home Mortg.*, 2017 WL 8186694, at *14 (N.D. Ga. Dec. 8, 2017). The general rule is that money is not the type of property that is subject to an action for conversion. *Id.* (citing *City of Atlanta*

38

*v. Hotels.com, L.P.*, 332 Ga. App. 888, (Ga. Ct. App. 2015)). There is an exception to this general rule when the money to be recovered is specific and identifiable; conversion of checks is one such exception because checks designate a specific amount of money for use for specific purposes. *See Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 276 Ga. 817, 820 (2003). Plaintiff is asking for cash assets, personal property, and business assets with only $74,000 in home-sale proceeds made specific and identifiable. (Am. Compl., ¶ 154). The check is thus the only possible basis for a conversion claim. However, Plaintiff did not adequately allege title or right of title to the $74,000 because he made only conclusory legal statements. (*Id.* ¶¶ 58, 64, 70, 85, 99, 108, 120, 137, 146). Therefore, Plaintiff has failed to state a conversion claim, and the Court will dismiss the claim on this alternative ground.

### 8.  Abuse of Process and Intentional Infliction of Emotional Distress

Georgia common law has established malicious abuse of process to "wrongfully and unlawfully using legally and properly issued process for a purpose that the law never intend[ed] it to effect." *Westinghouse Credit Corp. v. Hall*, 144 B.R. 568, 578 (1992). The elements of the claim require 1) evidence of ulterior purpose and, 2) most critically, an act in the use of process which was not proper in the regular prosecution of the proceedings, after process had been issued. *See id.* Today, along with the malicious use of process tort action, Georgia's abusive litigation tort is codified in O.C.G.A. § 51-7-81, *see id.*, as

39

"any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: 1) with malice; and 2) without substantial justification." O.C.G.A. § 51-7-81. Plaintiff has failed to allege evidence of an ulterior purpose for either Defendant. *See Cooper v. Public Fin. Corp.*, 146 Ga. App. 250, 255 (1978) (holding no ulterior motive was present when payments were made before and after the suit's judgment); *see also West Ga. Pulpwood & Timber Co. v. Stephens*, 128 Ga. App. 864, 869 (1973) (alleging ulterior purpose in taxing livestock after their immediate private sale); *Dantley v. Burge*, 88 Ga. App. 478, 481 (1953) (alleging ulterior purpose in unlawfully using the warrant for a purpose other than rent collection). Plaintiff also failed to allege that Defendants acted with malice. *See Landers v. Ga. Pub. Serv. Comm'n*, 217 Ga. 804, 811 (1962) (holding no malice was present when conclusions had no factual allegations of improper purpose after being properly and legally prosecuted). Plaintiff's conclusion that Defendant Morris acted "without proper purpose," (Am. Compl., ¶ 159), is not enough to allege the ulterior purpose that legal proceedings were then turned to. The Court thus declines to analyze whether the second prong for an abuse of process claim is met. As the elements for abuse of process have not been met, the Court will also dismiss this claim on this alternative ground.

To prove an intentional infliction of emotion distress claim, the plaintiff

is required to show "1) conduct at issue was intentional or reckless; 2) the conduct was extreme and outrageous; 3) there was a causal connection between the wrongful conduct and the emotional distress; and 4) the resulting emotional distress was severe." *Canziani v. Visiting Nurse Health Sys., Inc.*, 271 Ga. App. 677, 679 (Ga. Ct. App. 2005). Whether the claim rises to the requisite level of outrageousness and egregiousness to be intentional infliction of emotion distress is a question of law. *See id.* However, in *Canziani*, the plaintiff explained the comment or action considered outrageous and/or egregious; Plaintiff has failed to do the same here. *Compare id.* (providing the exact comment); *compare also United Parcel Serv. v. Moore*, 238 Ga. App. 376, 377 (1999) (providing the "offensive" behavior of stopping a check for payment); *Northside Hosp., Inc. v. Ruotanen*, 246 Ga. App. 433, 434–35 (2000) (providing the exact language taken offense to). Therefore, without an offensive comment or action, the Court cannot evaluate whether such comment is outrageous or egregious, so this claim must be dismissed.

### 9.  Civil Conspiracy

Under the Georgia RICO statute, it is unlawful to conspire to violate a substantive provision of Georgia's RICO Act. *See Wylie v. Denton*, 323 Ga. App. 161, 165 (2013). A person is found liable for a RICO conspiracy when he "knowingly and willfully join[s] a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Id.*; *see also* O.C.G.A.

41

§ 16-4-3(9)(A)(i)–(xli). To assert a civil claim, a plaintiff must show defendants violated or conspired to violate the RICO statute which resulted in plaintiff suffering an injury and that the defendant's violation was a proximate cause of the injury. *See Wylie*, 323 Ga. App. at 165. Plaintiff alleges abuse of process, fraud, suppression of notice, and conversion as predicate RICO actions. (Am. Compl., ¶ 169). But only fraud is recognized in the statute as a predicate action. *See* O.C.G.A. § 16-14-3(5)(A)(xx). Fraud requires pleading with particularity. *See Bazemore v. U.S. Bank Nat'l Ass'n*, 363 Ga. App. 723, 730 (2022); *see also* O.C.G.A. § 9-11-9(b). However, Plaintiff did not give particular allegations as to how Defendant Morris conspired to commit fraud. Therefore, the Court will dismiss this claim. As all the claims have been dismissed on other grounds, the Court declines to analyze if qualified immunity would shield Defendants.

### G.  Claims Against Nonmoving Party

Defendant Potter has not moved to dismiss the Amended Complaint or joined in Defendants' Rockdale and Morris's motions. It is a well-established principle that when a plaintiff has been given an opportunity to be heard, *see N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 232 (E.D.N.Y. 2020), "[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related." *Boykin v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 3029862, at

*6 (E.D. Mich. July 6, 2012) (quoting *Bonny v. Soc'y of Llyod's*, 3 F.3d 156, 162 (7th Cir. 1993)); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008). "A court dismissing a plaintiff's claims against moving defendants may sua sponte dismiss non-moving defendants as well where 'it is clear that the same ruling would inevitably apply to each of the defendants'." *Boykin*, 2012 WL 3029862 at *6. Here, the fact that Plaintiff lacks standing and has alternatively failed to state a claim warrants dismissal for Defendant Potter as well on the same grounds.

## IV. Conclusion

As set forth above, the Plaintiff's Motion to Strike [Doc. 19] is DENIED. Defendants' Motion to Dismiss [Doc. 15] is GRANTED. Accordingly, Defendants' Motion to Stay [Doc. 16] and Plaintiff's Motion for a Scheduling Conference [Doc. 32] are DENIED as moot. The Clerk is directed to enter judgments for Defendants, and to close the case.

SO ORDERED, this ____4th____ day of August, 2026.

THOMAS W. THRASH, JR.
United States District Judge

43